United States District Court
For the Northern District of California

***E-Filed 11/17/11***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MARIE GAUDIN,

Plaintiff,

v.

SAXON MORTGAGE SERVICES, INC.

Defendants.

____________________________________/

No. C 11-1663 RS

**ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT**

In this putative class action, named plaintiff Marie Gaudin alleges that she and defendant Saxon Mortgage Services, Inc. entered into a written "Home Affordable Modification Trial Period Plan" ("the TPP"). Gaudin contends the TPP constituted a binding contract under which Saxon had the duty to evaluate her under the Homeowners Affordable Modification Program ("HAMP") and to offer her a permanent modification of the terms of her home mortgage agreement, in the event all the conditions of the TPP were satisfied. Gaudin contends that after she relied on the TPP to make reduced monthly payments during the trial period, Saxon wrongfully rejected her for a permanent modification, declared her loan in default, and initiated foreclosure proceedings.

Saxon moved to dismiss Gaudin's original complaint, contending, among other things, that the TPP gave rise to no legally enforceable obligations on its part, or at least to no obligation that Gaudin has alleged was breached. The motion was granted on the narrow ground that Gaudin had not averred that all of the conditions under the TPP had been satisfied, even assuming it otherwise

was an enforceable contract. Gaudin then filed an amended complaint, expressly alleging satisfaction of the TPP conditions. Saxon again moves to dismiss, reasserting its contentions that the TPP was not a binding contract, and arguing that the amendment is insufficient to cure the defect identified in the prior order. Because the amendment adequately addresses the defects identified in the prior order, the motion to dismiss will be denied.

1. *The TPP provisions*

Gaudin's TPP bears an "effective date" of June 1, 2009, and is titled, "Home Affordable Modification Trial Period Plan." Immediately below the title is a parenthetical stating, "Step One of Two-Step Documentation process." The first full paragraph of text provides, in relevant part, "if I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, *then the Lender will provide me with a Home Affordable Modification Agreement* . . . ." (Emphasis added.) The second paragraph continues, "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan, *if I qualify for the Offer* or will send me written notice that I do not qualify for the Offer. This plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature." (Emphasis added.) The TPP is in fact signed by both Gaudin and the lender, thereby implying that the lender found Gaudin to be qualified for a permanent loan modification.

Paragraph 2 G of the TPP is also relevant to evaluating Saxon's potential obligations. It provides:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of the a Modification agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents *if I fail to meet any one of the requirements under this Plan*. I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement *if the Lender has not received an acceptable title endorsement and/or subordination*

United States District Court
For the Northern District of California

*agreements from other lien holders, as necessary, to ensure that the modified mortgage Loan retains its first Lien position and is fully enforceable.*

(Emphasis added).

Finally, paragraph 3 of the TPP provides that the lender will make certain specified adjustments to calculate the new monthly payment amount. Then, "[i]f I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date." The paragraph concludes by explaining that upon execution of the Modification Agreement the TPP terminates and that the modified loan agreement thereafter governs the relationship between the parties.

2. "*Information and belief allegations*"

Saxon places heavy emphasis on the fact that the allegations of the amended complaint regarding fulfillment of the conditions of the TPP are all made "on information and belief." Saxon's implication that such allegations should be given less weight is understandable, as the phrase tends to convey a degree of uncertainty and, perhaps, speculation. Rule 11(b) of the Federal Rules of Civil Procedure, however, provides that by submitting a pleading to the court, the signatory is *always* certifying that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Here, Gaudin has not specifically identified any of the allegations as only being "likely to have evidentiary support" after discovery. Accordingly, all of the factual statements have been certified as having evidentiary support, to the best of counsel's knowledge, information, and belief, based on a reasonable pre-suit inquiry.

The "information and belief" language in the complaint may have been intended as a caveat that would provide additional protection should Gaudin be unable to prove any of the factual allegations. If so, it likely will not serve that purpose, as it cannot lessen the requirements of

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

reasonable pre-suit investigation under the rules, and the phrase is essentially surplusage. The inclusion of that language in the complaint, however, does not warrant treating the factual averments as insufficient.

3. *Contingencies*

As the order dismissing the original complaint found, the TPP makes very clear that it is not, in and of itself, a loan modification nor is it an *unconditional* commitment by the lender to provide one. Saxon insists that any obligations it had under the TPP were limited to *evaluating* Gaudin's eligibility for a loan modification under the federal guidelines of the HAMP program, and to provide her a loan modification agreement if and only if she proved to be eligible under those guidelines and had otherwise complied with all her obligations under the TPP. The flaw in Saxon's argument is that express language of the TPP simply does not include any such limitation or condition. To the contrary, the TPP indicates that while it may initially be presented to the borrower only as an offer to determine eligibility, once the lender returns a signed copy of it to the borrower (rather than notifying the borrower that he or she does not "qualify for the Offer"), then the borrower's eligibility for permanent modification has been determined, and the only remaining contingencies are those listed specifically in the TPP and summarized above.

Saxon flatly states that, "[t]he TPP conditions Plaintiff's ability to obtain a permanent loan modification agreement on a number of factors, including . . . Plaintiff meeting all of the conditions required for modification under the HAMP guidelines," but it has pointed to no language in the TPP embodying such a limitation. While, as noted above, paragraph 2G requires the borrower to "meet all of the conditions required for modification," there is no indication that any of those conditions are to be found outside the four corners of the TPP. Additionally, to the extent that language arguably could be understood as referring to some broader (and unstated) rules for eligibility under HAMP or otherwise, then the lender's return of the signed TPP implies the borrower has been found to be qualified under such criteria.

Saxon also relies on a cover letter that it asserts accompanied the TPP when it was provided to Gaudin, and which it contends is subject to judicial notice. Saxon argues that the cover letter

United States District Court
For the Northern District of California

more clearly sets out that qualification under HAMP guidelines operates as a prerequisite to any permanent modification. No proper basis for taking judicial notice of the cover letter exists,[1] but even if it did, the TPP by its terms represents an integrated agreement, and Saxon has not shown that it can be modified by, or must be construed in light of, anything in the cover letter. Furthermore, as noted, the TPP appears to be designed for presentation to the borrower initially as only an offer to evaluate eligibility, which becomes a binding agreement only after the lender returns a signed copy. If the cover letter accompanied an *unsigned* copy of the TPP, its discussion of eligibility requirements would have been entirely consistent with that design.

As Saxon strenuously argues, there is no private right of action under HAMP. *See Wright v. Bank of America, N.A.*, 2010 WL 2889117 at *5 (N.D.Cal., 2010). Unlike plaintiffs in *Wright* and numerous other cases, however, Gaudin has not attempted to state a claim that Saxon breached its obligations under HAMP and its servicing agreements by declining to offer her a permanent loan modification. Rather, Gaudin's claims are based solely on what Saxon allegedly was obliged to do by the terms of the TPP itself. While Gaudin has alleged that she was in fact eligible under HAMP guidelines, her claims under the TPP are not dependent on that averment being correct. Accordingly, at least at the pleading stage, there is no basis to conclude that once Gaudin was provided with a signed copy of the TPP, Saxon's obligation to provide a permanent loan modification remained contingent on an evaluation of her eligibility under HAMP guidelines.[2]

In the alternative, even assuming Gaudin's eligibility under HAMP guidelines was a prerequisite to any obligation to offer her a loan modification, the amended complaint adequately

---

[1] Saxon's request for judicial notice of various government publications related to the HAMP program and of Gaudin's mortgage (RJN exhs. 1-4) is proper and is granted. Judicial notice of the cover letter and other correspondence between the parties (RJN exhs. 5-7) is denied.

[2] Saxon asserts that under the HAMP program guidelines in effect prior to 2010, some borrowers were in fact given TPPs before they were determined to be eligible for permanent loan modifications, and that the Department of Treasury thereafter issued a "Supplemental Directive" to end that practice. While it may very well be that the Treasury Department and lenders did not ever *intend* that binding commitments to provide modifications would be made unless and until verification of eligibility had occurred, the change in policy appears to reflect a recognition that the language of the TPPs reflect just such a promise.

alleges not only that Gaudin satisfied that criteria, but that Saxon in any event breached its obligations under the TPP to evaluate her application fairly and in good faith. While Gaudin's assertions that she qualified for modification under HAMP are unavoidably conclusory to some degree, she has alleged facts to support an inference that, at a minimum, Saxon did not make a good faith determination to the contrary. Specifically, Gaudin has averred that Saxon repeatedly advised her in writing that she was not being offered a permanent loan modification for reasons she contends are demonstrably false, and that it never stated she did not qualify under HAMP.

In addition to its contention that the TPP was contingent on HAMP eligibility, Saxon relies on paragraph 2F, which provides that the "Loan Documents will not be modified and the Plan will terminate" if, among other things, the lender does not provide a "fully executed copy of this Plan *and the Modification Agreement*." (Emphasis added.) Read literally, this language would suggest that even if all other conditions are satisfied, a lender has no obligation to provide a loan modification agreement unless it in fact provides a modification agreement. As noted in the prior order, this provision conflicts with the clear tenor of the remainder of the document and would render the other agreement promises illusory. At least at the pleading stage, a reasonable inference can be drawn that the language was merely intended to reemphasize to borrowers that their underlying loan agreements cannot and will not be deemed modified or no longer enforceable until and unless final modification agreements are fully executed. While the provision admittedly gives rise to an ambiguity, it does not permit a determination as a matter of law that the lender has unbridled discretion as to whether or not it will provide an executed copy of a modification agreement upon satisfaction of all other conditions of the TPP.

As noted above, the original complaint was dismissed on grounds that Gaudin had entirely failed to allege satisfaction of the conditions set forth in the TPP. The amended complaint remedies that defect.

4. *Consideration*

As in its motion to dismiss the original complaint, Saxon further argues that the TPP was not supported by adequate consideration, given that Gaudin had a pre-existing legal obligation to make monthly loan payments in an amount even greater than those called for under the TPP. The prior order rejected that argument, for the reasons identified in *Lucia v. Wells Fargo Bank*, 2011 WL 3134422, *5 (N.D. Cal. 2011). Additionally, by promising to comply with the terms of the TPP, Gaudin exposed herself to greater liability for interest and late charges should permanent modification not be consummated. Accordingly, at least at the pleading stage, it cannot be determined that the TPP fails for lack of consideration.

5. *Other Claims*

The prior order dismissed Gaudin's claim under the Rosenthal Act because it was unclear how the conduct she alleged would constitute an unlawful debt collection effort within the meaning of the act. Gaudin has now explained her theory that Saxon utilized the TPP in a misleading and deceptive manner to induce her to make payments. Saxon's contention that the complaint alleges no false or misleading statements relies on its insistence that the TPP unequivocally did not promise Gaudin a permanent loan modification. Even assuming Saxon may ultimately prevail on grounds that the TPP was not an enforceable contract or that Gaudin did not satisfy some applicable condition for loan modification, based on the facts presently alleged, the TPP was at a minimum misleading. No basis to dismiss the Rosenthal Act claim appears at this juncture.

Saxon's remaining contentions likewise do not warrant dismissal of any portion of the complaint. While the breach of the covenant of good faith and fair dealing claim may be subsumed in or duplicative of a breach of contract claim, in light of the conclusion that the TPP may provide a basis to proceed in contract, Saxon's substantive arguments against it fail. Similarly, even assuming that the rescission and restitution counts might more properly be labeled as remedies rather than separate counts, they are not substantively deficient, given the viability of the underlying claims. Finally, the claim under California unfair competition law survives at the pleading stage in light of the Rosenthal Act claim and the allegations of misleading and deceptive conduct.

United States District Court
For the Northern District of California

Accordingly, the motion to dismiss is denied. Saxon shall file its answer to the amended complaint within 20 days of the date of this order. The parties shall appear for a Case Management Conference on January 19, 2012, at 10:00 a.m., with a joint Case Management Conference Statement to be filed one week in advance.

IT IS SO ORDERED.

Dated: 11/17/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE